People v Richards (2019 NY Slip Op 07810)





People v Richards


2019 NY Slip Op 07810


Decided on October 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 31, 2019

109293

[*1]The People of the State of New York, Respondent,
v
Timothy J. Richards, Appellant.

Calendar Date: September 9, 2019

Before: Lynch, J.P., Clark, Devine and Pritzker, JJ.


John A. Cirando, Syracuse, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (William D. VanDelinder of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Chemung County (Baker, J.), rendered January 9, 2017, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the second degree.
In July 2016, defendant was arrested and charged with criminal possession of a controlled substance in the second degree and unlawful manufacture of methamphetamine in the third degree based upon the discovery by officers of the Chemung County Sheriff's Department of a methamphetamine lab in a shed behind the trailer in which defendant resided with his girlfriend and her children. County Court (Hayden, J.) denied defendant's motion to suppress the physical evidence against him, and defendant thereafter pleaded guilty to criminal possession of a controlled substance in the second degree in full satisfaction of the indictment. In accordance with the plea agreement, County Court (Baker, J.) sentenced defendant, as a second felony offender, to six years in prison, followed by five years of postrelease supervision. Defendant appeals, and we affirm.
Defendant maintains that the methamphetamine lab was discovered as the product of an illegal warrantless search and seizure and that, therefore, County Court (Hayden, J.) should have granted his motion to suppress that evidence. Warrantless searches and seizures within the privacy of the home are presumptively unreasonable, subject only to carefully circumscribed exceptions to the warrant requirement (see People v Jenkins, 24 NY3d 62, 64 [2014]; People v Knapp, 52 NY2d 689, 694 [1981]). Where a warrant is not obtained, the People bear the burden of overcoming the presumption of illegality by establishing the applicability of such an exception (see People v Sanders, 26 NY3d 773, 776-777 [2016]; People v Hodge, 44 NY2d 553, 557 [1978]).
We agree that the People satisfied their burden here. The proof presented at the hearing established that the Sheriff's Department received a tip that defendant was operating a methamphetamine lab in the shed and that, prior to acting on that tip, it was determined — through a search of the national precursor log exchange system — that defendant and his girlfriend had previously purchased Sudafed, a pseudoephedrine product used in the production of methamphetamine, and that subsequent purchases attempted by defendant had been denied. The hearing testimony reflected that, based on this information, four police officers went to defendant's residence without a search warrant, intending to do a "knock and talk" with the occupants. The testimony demonstrated that one of the officers — Nicholas DeMuth — positioned himself outside the property line where he could see the back of the trailer, while the others went to the front door. DeMuth testified that, shortly after he got into position, defendant ran out of the back door holding an unknown object [FN1] and that, in response, he immediately drew his weapon and ordered defendant to show his hands. According to DeMuth, defendant dropped the item and attempted to run back inside the trailer; however, at that moment, a dog exited the trailer and aggressively approached DeMuth. The evidence, including video footage captured by defendant's surveillance system, reflected that two of the other officers entered the backyard to assist DeMuth and that both the dog and defendant were ultimately restrained.
DeMuth testified that, once the situation settled, he observed that the door to the shed was partially open, approximately 20-25 inches, which raised officer safety concerns given the possibility that another person could be inside. He stated that, in addition to not knowing if any other individual was in the shed, he did not know what defendant had dropped from his hand at the base of the trailer's back steps. All of the attendant circumstances, including DeMuth's knowledge of the tip and defendant's conduct in running out the back door, justified DeMuth's actions in conducting a limited protective sweep, which consisted of walking to the base of the trailer's back steps, where the unknown item had been dropped, and peering inside the shed (see Maryland v Buie, 494 US 325, 334-336 [1990]; People v Bryant, 91 AD3d 558, 558 [2012], lv denied 20 NY3d 1009 [2013]). The record establishes that, once DeMuth was lawfully in position, he was able to observe the incriminating evidence in plain view inside the shed (see People v Bryant, 91 AD3d at 558; People v Eddo, 55 AD3d 922, 923 [2008], lv denied 11 NY3d 897 [2008]; People v McAllister, 35 AD3d 300, 300 [2006], lv denied 8 NY3d 925 [2007]). Indeed, DeMuth testified that the shed was illuminated by an interior light,[FN2] which allowed him to see what looked like a handgun on the wall, a glass jar with a filter on top of it and another glass jar set on a burner, although he could not determine whether that burner was active. Contrary to defendant's contention, the surveillance footage does not conclusively refute DeMuth's testimony that he was able to see the contraband inside the shed through the partially-opened door.
DeMuth testified that his observations, together with his knowledge of the tip and the information obtained from the national precursor log, led him to believe that there was an active methamphetamine lab inside the shed. He stated that, based upon his training and experience regarding the dangers of methamphetamine production, particularly the risk of explosion, he immediately became concerned for the safety of the inhabitants of the trailer (which included several children), himself and his fellow officers and that he fully opened the door to the shed to provide ventilation. DeMuth's testimony demonstrated that he had objectively reasonable grounds for believing that the contents of the shed posed an immediate danger to everyone present on the scene and, thus, that his actions in opening the door to the shed were justified (see People v Alberts, 161 AD3d 1298, 1302-1303 [2018], lv denied 31 NY3d 1114 [2018]). The record establishes that the methamphetamine lab was subsequently seized by the New York State Police Contaminated Crime Scene Emergency Response Team. In view of all of the foregoing, we find that the warrantless search and seizure of the methamphetamine lab was justified by exceptions to the warrant requirement [FN3] and, thus, we find no basis upon which to disturb the denial of defendant's motion to suppress the physical evidence against him.
Defendant's remaining contention — that his guilty plea was not knowing, intelligent and voluntary — is unpreserved for our review as the record does not reflect that he made an appropriate postallocution motion (see People v Henry, 166 AD3d 1213, 1214 [2018], lv denied 33 NY3d 949 [2019]; People v Gray, 162 AD3d 1248, 1248 [2018]). Moreover, the narrow exception to the preservation rule is not applicable inasmuch as defendant did not make any statements during the plea colloquy that cast doubt upon his guilt or otherwise called into the question the voluntariness of his plea (see People v Williams, 171 AD3d 1354, 1355 [2019]; People v Hatch, 165 AD3d 1321, 1321-1322 [2018], lv denied 32 NY3d 1125 [2018]).
Lynch, J.P., Devine and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The item was later identified as a carabiner with several keys attached.

Footnote 2: DeMuth also testified that music was playing inside the shed.

Footnote 3: Given that other exceptions apply, we need not address whether defendant and his girlfriend voluntarily consented to the search.